ANNIE JOLLIMORE, ADMINISTRATRIX, vs. THE CONNECTICUT COMPANY.

Third Judicial District, Bridgeport, October Term, 1912.
HALL, C. J., PRENTICE, THAYER, RORABACK and WHEELER, Js.

In an action against a street-railway company for damages for causing the death of the plaintiff's intestate by negligence, the burden rests upon the plaintiff to prove the decedent's freedom from contributory negligence; and therefore in the absence of any evidence upon that subject, judgment must necessarily be rendered for the defendant.

There is no presumption of law that a boy eleven years old was incapable of contributory negligence. To determine whether he was or not it is necessary to take into consideration not only his age, but also his intelligence, experience, and capacity to understand and avoid the danger to which he was exposed.

The evidence in the present case reviewed, and the negligent act of the decedent in running upon the track just in front of the approaching car, *held* to have been the proximate cause of his injury.

Argued October 22d—decided December 19th, 1912.

ACTION to recover damages for personal injuries resulting in the death of the plaintiff's intestate, and

alleged to have been caused by the defendant's negligence in operating a street-railway car, brought to the Superior Court in New Haven County and tried to the jury before *Williams, J.;* verdict for the plaintiff for $2,000, which the trial court set aside as against the evidence, from which action the plaintiff appealed. *No error.*

*Robert J. Woodruff,* for the appellant (plaintiff).

*Thomas M. Steele* and *Harrison T. Sheldon,* for the appellee (defendant).

RORABACK, J.   The allegations of negligence relied upon by the plaintiff were that the car was going at a high rate of speed, that no warning was given of its approach, and that the motorman did not take proper steps to avoid the accident after he saw, or should have seen, the danger of the deceased.

The accident occurred on October 30th, 1911, on Ferry Street, between Wolcott and Chambers streets, in the city of New Haven.   Ferry Street runs north and south, and is fifty feet in width.   There is a sidewalk on each side of the street.   The distance from curb to curb is thirty feet.   The distance from the curb to the track, where the accident occurred, is seven and one half feet. Ferry Street is practically straight for several blocks to the north of Wolcott Street.   Neither Wolcott nor Chambers Street cross Ferry.   Wolcott Street runs into Ferry Street from the west, and, a short distance to the south, Chambers Street runs into it from the east.   The defendant operates a double track trolley-line through Ferry Street, and the car concerned in the accident was running south on the westerly track and on a down grade.   It was a double truck, closed car, about forty feet long, equipped with air brakes.   It

had just left the car barn, only a few blocks away, for its regular run, and had taken on no passengers up to the time of the accident.

The plaintiff's intestate at the time of his death was eleven years and about two months old. He had attended school since he was seven years old, and was a bright boy. At the end of each year he had passed into a higher grade, and at the time of the accident was in the fifth grade. He had attended three different schools during this period, all so situated that in going to and from school he was required to cross trolley-tracks, and during the four years he had had no escort other than his sister, who was a year and a half older, except that on one occasion his mother had gone with him. He also delivered newspapers, and had a route on several different streets through which the trolley-cars were operated. For a year and a half before the accident he had lived on Pierpont Street, a short block northerly of Wolcott, and had been accustomed during this year and a half to play around, with other boys of his age, in the streets at and near the place where the accident happened.

The time of the accident was shortly after half past three in the afternoon. During all the earlier part of the afternoon the plaintiff's intestate had been playing with other boys about the streets in the vicinity, frequently crossing and recrossing the tracks on Ferry Street. The boys were engaged in a game which they called "playing horse," or "playing policeman." The testimony indicated that at the time the accident occurred part of the boys had run up Chambers Street, and that the plaintiff's intestate, who was acting the part of a horse and being driven by another boy, had gone up Wolcott Street to give the other boys a start, and that the game was for the plaintiff's intestate and the boy driving him to run after and try to catch the

others.  When the Jollimore boy and his companion started to run after the other boys, they ran along Wolcott Street to the corner, and immediately started to run across Ferry Street in the direction of Chambers Street.  There was some conflict in the testimony whether the boys ran straight into Ferry Street from the corner of Wolcott Street, or whether they ran south and then turned onto the track.  All the witnesses agree that the decedent was running across the track when he was hit, near the southerly cross-walk from Wolcott Street.  It also appeared that he was struck immediately as he reached the defendant's track.

In the present case it cannot be presumed that this boy, of the age of eleven years, was incapable of contributory negligence, and the burden was upon the plaintiff to show that the deceased was free from negligence contributing to his injury.  If no evidence were offered upon this subject, the judgment would necessarily be against the plaintiff.  *Rohloff* v. *Fair Haven & W. R. Co.*, 76 Conn. 689, 693, 58 Atl. 5.

To determine the question of contributory negligence, it was necessary to take into consideration the age of the boy, his experience, intelligence, and capacity to understand and avoid the danger to which he exposed himself.  The evidence clearly refutes the claim of due care on the part of the deceased when he was injured. It appears that he voluntarily and thoughtlessly put himself in a position of great and obvious danger.  His age, intelligence, and experience were such that he must have understood and appreciated the danger of being struck and injured by a trolley-car in crossing the tracks.  His view of the street for a long distance in the direction of the approaching car was unobstructed.  The distance from the curbstone to the nearest rail was only about seven and one half feet.  There is no dispute that he ran from the curb to the track in

front of the car, and that he was hit instantly upon reaching the track. He was engaged in a dangerous sport, and his injury was a natural result of his own carelessness. Whether there was sufficient evidence to justify the jury in finding that the defendant was negligent, it is unnecessary for us to decide. Assuming that the plaintiff established the alleged negligence of the defendant, the burden which lay on the plaintiff, of proving the absence of contributory negligence on the part of her intestate, was not satisfied. *Elliott* v. *New York, N. H. & H. R. Co.*, 84 Conn. 444, 447, 80 Atl. 283; *Cottle* v. *New York, N. H. & H. R. Co.*, 82 Conn. 142, 144, 145, 72 Atl. 727.

The jury could not have reasonably found that the proximate cause of the accident was because the motorman might have avoided the injury by exercising reasonable care after the peril of the deceased should have been known to him.

The evidence leaves no rational ground for any conclusion other than that the final act of negligence, which was the proximate cause of the accident, was that of the plaintiff's intestate in running upon the track in front of the car when it must have been within a very few feet of him, and when the motorman was helpless to avert the result.

There is no error.

In this opinion the other judges concurred.